UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:08CR282 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| AESHA JOHNSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

In November 2008, the defendant was sentenced to three years probation following her plea of guilty to one count of concealment of assets in bankruptcy in violation of Title 18 U.S.C. § 1152(1). Since then, the defendant has twice had a series of probation violations and also violated the conditions of her bond. As a result of her first probation violation hearing in December 2008, this Court elected to modify the terms of her probation. In April 2009, during her second probation violation hearing, the defendant admitted to four new probation violations. As a consequence, this Court revoked the defendant's probation and sentenced her to six months imprisonment, followed by a term of supervised release. The defendant now seeks to have this Court reconsider the length of the term of imprisonment imposed.[1] (Doc. No. 53.) The government opposes the motion. (Doc. No. 54.) For the reasons that follow, the defendant's motion is **DENIED**.

---

[1] There is no legal basis for defendant's motion because courts may not modify terms of imprisonment once they have been imposed, except under limited circumstances. 18 U.S.C. § 3582(c). The only possible basis under § 3582(c) would be a motion under Rule 35 of the Federal Rules of Criminal Procedure. Rule 35 only applies in cases of clear error or substantial assistance. Fed. R. Crim. P. 35. Because defendant bases her motion on changed circumstances and family hardship, Rule 35 is inapplicable. On this separate basis, therefore, the defendant's motion is DENIED.

I.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 25, 2008, the defendant was sentenced to three years of probation, six months of location monitoring, payment of restitution in the amount of $14,745.05, and other terms and conditions, as a result of her plea of guilty to one count of concealing assets in bankruptcy. (Doc. No. 52, TR., 2.) On December 22, 2008, the Court elected to modify the terms of her probation following her admission that she was in violation of the original terms and conditions imposed by this Court. *Id.* On April 9, 2009, the Court subsequently revoked the defendant's probation following her admission of four new violations of the terms and conditions of her probation, determined that the appropriate guideline range was four to ten months imprisonment, and imposed a six month prison term, followed by a term of supervised release. (Doc. No. 52, Tr., 2; Doc No. 54, Memo, 3.) The Court agreed to permit the defendant to self report to the Bureau of Prisons to begin serving her prison term. In less than one month, however, the defendant violated the terms and conditions of her bond. (Doc. No. 52, Tr., 3.) The Court responded by ordering several additional bond conditions and setting her report date for May 22, 2009. *Id.* at 5, 12. Later, in order to accommodate, inter alia, the school schedule of the defendant and her children, the self-report date was modified to June 22, 2009. As to the sentence imposed, the Court explained to the defendant that in light of her unwillingness and/or inability to communicate with her probation officer, coupled with the nature of her violations, the defendant left the Court with no alternative but to impose a period of incarceration. *Id.* at 10.

The defendant repeatedly expressed concern as to how her children would be affected by her absence. At her revocation hearing, the defendant called Douglas Taylor, a case manager at Cleveland's Murtis Taylor Multi-Service Systems, as a witness to speak on her behalf. *Id.* at 33. Taylor stated that the defendant's ten year-old son is being treated for ADHD and social issues at school. *Id.* at 34. He further testified that the defendant's absence would be a traumatic experience for her son and family.[2] *Id.* After the defendant was sentenced, she noted, "I have little kids. My daughter is having panic attacks. . . . My kids need me. I take care of them by myself. . . . There is nobody to help take care of them. . . . They could end up in foster care, even if it's six months." *Id.* at 44.

The defendant planned for her boyfriend to take care of her children while she was incarcerated. (Doc. No. 53-3, Ex. B.) On April 27, 2009, however, he was severely injured in a motorcycle accident and placed in intensive treatment. *Id.* The defendant then requested to delay her self-report date, to have additional time to visit her boyfriend, and to travel outside the District. (Doc. No. 54, Memo, 4.) As noted previously, the Court delayed her self-report date to June 22, 2009, permitted the defendant an extended period of time to visit her hospitalized boyfriend, but denied her request to travel outside the District. *Id.* Mr. Taylor submitted a letter on May 21, expressing his opinion that having both the defendant and her boyfriend unavailable for six months could have a devastating effect on the children's development. (Doc. No. 53-3, Ex. B.)

---

[2] Defendant has three children: fourteen year-old and six year-old daughters, and a ten year-old son. (Doc. 53, Motion, 5, 7-8.)

The next day, the defendant moved for reconsideration of her sentence. (Doc. No. 53, Motion, 8.) She argues that a six month term will not fairly satisfy the statutory goals of punishment, but that a two month term would be sufficient, would allow her to return safely to the community, and would let her prepare her children for school. *Id.* at 9. She also cites an interest in retaining employment, likelihood of successful supervision, and acceptance of responsibility as factors for consideration. *Id.* at 8-9.

## II.

## **LAW AND ANALYSIS**

It is the district court's duty to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"[3] *Kimbrough v. U.S.*, 128 S.Ct. 558, 570 (2007). Once the appropriate advisory guideline sentencing range is calculated, a district court is to consider it in addition to those factors. *U.S. v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006).

In this case, the Court believes that the sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). In sentencing the defendant, the Court considered the factors it was required to consider, including the statutory and guideline provisions, and determined that the

---

[3] Courts also consider: (i) Nature of offense and defendant, (ii) necessity, (iii) available sentences, (iv) guideline ranges, (v) policy, (vi) sentencing disparities, and (vii) restitution. 18 U.S.C. § 3553(a).

advisory guideline range of punishment was four to ten months. (Doc. No. 29, Violation Rep., 6; Doc. No. 41, Superseding Rep., 7.) In the end, the Court imposed a sentence within and near the low end of the advisory guideline range. *Id.* Notably, the defendant does not challenge the Court's advisory guideline sentence calculation. (Doc. No. 51, Tr., 23.)

The sentence is also supported by the Court's consideration of additional factors in the sentencing process. The Court noted that the defendant has demonstrated either that she is "unwilling or incapable of communicating" with authorities. (Doc. No. 52, TR., 10.) She violated her probation only weeks after it began, and she repeatedly demonstrated a lack of communication with the U.S. Probation Department. Her history of violations suggests that incarceration was a proper sanction, and it now weighs against her contentions that "[t]he community can be protected with a reduced sentence . . . .", that "[Defendant] is likely to be more successful on supervision if she is able to return . . . earlier . . . .", and that "[defendant] fully understands her responsibility to follow the conditions of her supervision upon release." (Doc. No. 53, Motion, 8.) The Court explained to the defendant at her revocation hearing that if every probationer behaved similarly to her, then probation offices would be unable to function effectively. (Doc. No. 51, Tr., 37.) Nevertheless, her subsequent violation evidenced further lack of compliance. (Doc. No. 41, Superseding Rep., 6.) Ultimately, the defendant's violations demonstrate the necessity of her sentence.

Though she argues that her sentence will negatively affect her children, the Court considered her concern at nearly every stage of the process. At the original sentencing, the Court considered that she had custody of her children and that she

constituted their primary means of support. The Court weighed that factor when sentencing after each violation. It considered her family situation when she expressed concern for what would happen to them following her imprisonment. (Doc. No. 51, Tr. 38, 44; Doc. No. 52, Tr., 12.) Moreover, she called her son's case manager as a witness in her revocation hearing, and he spoke about the possible negative effects of her absence on her children. (Doc. No. 51, Tr., 34-35.) Thus, the Court was and is cognizant of her concerns and considered the entirety of the defendant's circumstances when imposing a prison term following her second series of probation violations.

Furthermore, her boyfriend's injury does not justify further reconsideration. In order to accommodate the defendant in light of her boyfriend's injuries and the need to make alternate provisions for her children, the Court delayed her self-report date for a month and gave her additional time away from home to visit with her hospitalized boyfriend. (Doc. No. 54, Memo, 4.)

Ultimately, the hardships that the defendant's children may experience during the defendant's incarceration do not justify a reduction. While unfortunate, the defendant's circumstances are not unusual. Imprisoning a parent by definition separates her from her children. In many cases the other parent may be unable to care for them, and they will have to live with relatives, with friends, or in foster homes. *See U.S. v. Archuleta,* 128 F.3d 1446, 1451 (10th Cir.1997) (quoting *U.S. v. Brand,* 907 F.2d 31, 33 (4th Cir.1990)). Prison terms place hardship on family, but that does not necessarily make them unreasonable. Yet incarceration is necessary in this case in light of the defendant's demonstrated inability and/or unwillingness to comply with alternative sanctions.

## III.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion for reconsideration of sentence is **DENIED.**[4]

**IT IS SO ORDERED**.

Dated: June 18, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[4] The defendant's self-report date to commence serving her six-month term of imprisonment remains June 22, 2009.